IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-01078

**EVENS TENE**, and **CHRISTIAN KLOUNTCHA**,
on behalf of themselves and others similarly situated,

        Plaintiffs,

  v.

**UNITED GROUND EXPRESS, INC.,**

        Defendant.

**DEFENDANT UNITED GROUND EXPRESS, INC.'S NOTICE
OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

PLEASE TAKE NOTICE that Defendant United Ground Express, Inc. ("UGE") hereby removes this matter to the United States District Court for the District of Colorado, pursuant to 28 U.S.C. §§ 1332(d), 1441(b), and 1446, and D.C.COLO.LCivR 81.1.  The grounds for removal are as follows:

1. On February 23, 2024, Plaintiffs Evens Tene and Christian Klountcha filed a Complaint in the District Court for the State of Colorado, Denver County, Case No. 2024-CV-30583, entitled *Tene v. United Ground Express, Inc.* (the "Complaint").  A true and correct copy of Plaintiffs' Complaint is attached to this Notice of Removal as **Exhibit 1**.

2. Plaintiffs purport to represent putative classes of "[a]ll hourly workers whom United Ground Express, Inc. employed exclusively at the Denver International Airport" between February 23, 2021 and December 31, 2023 and between February 23, 2018 and December 31, 2023 (the "Classes").  Compl. ¶¶ 39, 40. Plaintiffs seek recovery of unpaid overtime wages with interest, penalties, liquidated damages, and attorneys' fees and costs.  *Id.* at Prayer for Relief.

3. On February 28, 2024, Plaintiffs served UGE's the Summons and Complaint, Civil Cover Sheet, Pre-Trial Order and Discovery Protocol, Preservation and Demand Letter, and Delay Reduction Letter.  True and correct copies of these documents, all other process, pleadings, and orders that have been served by or on UGE in that case, and the state court's register of actions have been provided as **Exhibits 1–15** as follows:

| | | |
|---|---|---|
| Exhibit 1: | Complaint |
| Exhibit 2: | Civil Case Cover Sheet |
| Exhibit 3: | Summons |
| Exhibit 4: | Delay Reduction Order |
| Exhibit 5: | Pre-Trial Order and Discovery Protocol |
| Exhibit 6: | Demand for Trial by Jury |

| | |
|---|---|
| Exhibit 7: | Return of Service |
| Exhibit 8: | Affidavit of Service |
| Exhibit 9: | Clerk's Entry of Default |
| Exhibit 10: | Unopposed Motion for Extension of Time to Respond to Plaintiff's Complaint |
| Exhibit 11: | Statement Regarding Entry of Default Judgment |
| Exhibit 12: | Order Granting Unopposed Motion for Extension of Time to Respond to Plaintiff's Complaint |
| Exhibit 13: | Order re Statement Regarding Entry of Default Judgment |
| Exhibit 14: | Preservation and Demand Letter dated February 28, 2024 |
| Exhibit 15: | State Court Register of Actions |

4. Pursuant to 28 U.S.C. § 1446(d), UGE will promptly provide written notice of removal of the state court action to Plaintiffs and will file a copy of this Notice of Removal with the Clerk of the District Court for the State of Colorado, Denver County.

5. In accordance with 28 U.S.C. § 1446(a), Exhibits 1 through 13 constitute all process, pleadings, and orders that have been served by or on UGE in the state court action as of the date this Notice of Removal was filed.

## TIMELINESS OF REMOVAL AND VENUE

1. Actions may be removed to federal court within thirty days from the date a defendant receives "unequivocal notice of the right to remove." *See Kavkaz Express, LLC v. Endurance Worldwide Ins. Ltd.*, No. 22-CV-00192-RM-NYW, 2022 WL 897107, at *6 (D. Colo. Mar. 28, 2022) (citation omitted). Thus, where a complaint does not contain "specific allegation[s]" concerning the jurisdictional prerequisites for removal, such that the bases for removal are not apparent on the face of the pleading, the deadline for removal does not begin until

the defendant "completes its own investigation." *Garitano v. Chick-fil-a, Inc.*, No. 20-CV-03631-PAB-KMT, 2021 WL 287788, at *2 (D. Colo. Jan. 28, 2021) (citations omitted)

2. UGE has removed this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), PL 109-2, February 18, 2005, 119 Stat. 14, which requires that there be (1) minimal diversity of citizenship between the parties; (2) more than 100 class members in aggregate; and (3) at least $5 million in controversy. 28 U.S.C. §§ 1332(d), (5)(B).

3. It is not apparent on the face of the Complaint that each of those jurisdictional prerequisites are met. Accordingly, UGE did not have notice of the basis to remove this action until April 19, 2024, when it completed its investigation to determine that CAFA's jurisdictional requirements are satisfied. This Notice was filed that same day. Removal is therefore timely.

4. "Minimal diversity requires that 'any member of a class of plaintiffs is a citizen of a State different from any defendant.'" *Cooper v. US Dominion, Inc.*, No. 21-cv-02672-PAB-STV, 2021 WL 5565806, at *1 (D. Colo. Nov. 29, 2021) (citing 28 U.S.C. § 1332(d)(2)(A)). The Complaint does not allege the citizenship of the named Plaintiffs, Evens Tene or Christian Klountcha. Nor does it contain any allegations regarding the citizenship of the members of the putative classes. On or about April 9, 2024, counsel for UGE received a call from another attorney based in Texas who indicated that Plaintiff Tene had lived in Texas during the period relevant to this lawsuit. In an effort to determine Plaintiffs' citizenship for the purpose of CAFA removal, on April 11, 2024, counsel for UGE asked counsel for Plaintiffs to identify Plaintiffs' citizenship. In response, Plaintiffs' counsel stated only that "[t]he Plaintiffs' addresses are listed" at the end of the Complaint. However, an individual's address is not determinative of citizenship. *E.g.*, *Potts v. Westside Chrysler Jeep Dodge, LLC*, No. CIV-21-502-D, 2021 WL 4129626, at *2 n.1 (W.D. Okla. Sept. 9, 2021) ("[A] residential address in [the state] does not mean that person is a citizen of [the state].") (citation omitted). Thus, UGE performed its own investigation into Plaintiffs' citizenship, which it completed on April 17, 2024. Through that investigation, which involved

3

searches of public records and "skip-trace" searches, UGE was unable to conclusively determine the citizenship of Plaintiff Tene,[1] but was able to determine that Plaintiff Klountcha is a citizen of Colorado.[2]

5.   Under 28 U.S.C. § 1332(d)(2), there must be at least $5,000,000 in controversy for a case to be removable under CAFA.  *E.g.*, *Dutcher v. Matheson*, 840 F.3d 1183, 1190 (10th Cir. 2016).  The Complaint contains no allegations concerning the amount-in-controversy, let alone allegations that provide "unequivocal notice" that the requisite amount is met.[3]  Accordingly, UGE conducted its own investigation by reviewing and analyzing its business records to determine the amount-in-controversy in this case.  UGE completed that investigation on April 19, 2024.  That investigation revealed that Plaintiffs' claims place at least $7,520,291.60 in controversy.

6.   This United States District Court is the proper district court for removal because Plaintiffs originally filed their Complaint in the District Court for the State of Colorado, Denver County, which is located within the District of Colorado.  *See* 28 U.S.C. § 85.  As such, venue is proper in this Court because "it is the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

---

[1] Public records searches for Tene indicate that his most recent address is a P.O. Box in Colorado that is different from the address listed at the end of the Complaint; (2) he has active voter registrations in both Texas and Colorado; and (3) he has at least three cars registered in Texas. Given this information, UGE cannot say with any degree of certainty where Tene is a citizen for purposes of CAFA jurisdiction.

[2] Public records searches indicate that Klountcha has lived in Colorado since at least 2021, has no known addresses in any other state, and has a vehicle registered in Colorado.

[3] In a demand letter sent to UGE by Plaintiffs' counsel, Plaintiffs demanded that UGE pay more than $32 million.  That letter, however, provides no explanation as to how that figure was calculated, does not appear to cover all of the claims raised in Plaintiffs' Complaint, and as discussed below, is inconsistent with the amount-in-controversy that UGE has calculated based on its records.  As such, while that demand letter supports the conclusion that CAFA's amount-in-controversy requirement has been met, UGE was required to perform its own investigation into the amount-in-controversy to establish that monetary threshold.

**REMOVAL JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT**

1. This Court has original jurisdiction over this matter pursuant to CAFA. Under that statute, federal courts have original jurisdiction over a class action whenever: (1) "any member of a [putative] class of plaintiffs is a citizen of a State different from any defendant," 28 U.S.C. § 1332(d)(2)(A); (2) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," *id.* § 1332(d)(2); and (3) "the number of members of all proposed plaintiff classes in the aggregate is" more than 100, *id.* §§ 1332(d)(2), (5)(B). As detailed below, all CAFA requirements are satisfied in this case.

**Minimal Diversity of Citizenship Exists**

2. Under CAFA, the minimal diversity requirement is satisfied when: (1) at least one plaintiff is a citizen of a state in which none of the defendants are citizens; (2) at least one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen; or (3) at least one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state. 28 U.S.C. § 1332(d)(2). "Under CAFA, a federal district court has subject matter jurisdiction over class actions…[when] minimal diversity is met (between at least one defendant and one plaintiff-class member)." *Dutcher*, 840 F.3d at 1190 (citation and quotation marks omitted).

3. A corporation is deemed to be a citizen of the states where it is incorporated and where its principal place of business is located. *See* 28 U.S.C. § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77 (2010). UGE is incorporated in the State of Delaware and has its principal place of business in Chicago, Illinois. UGE is therefore a citizen of Delaware and Illinois.

4. As discussed above, through its investigation into the citizenship of the Plaintiffs in this case, UGE has determined that Plaintiff Klountcha is a citizen of Colorado.[4]

---

[4] In the event Plaintiffs contest that Plaintiff Klountcha is a citizen of Colorado, UGE reserves the right to show that other members of the putative classes are citizens of states other than Delaware and Illinois and thus minimal diversity exists in this case.

5.     Accordingly, CAFA's minimal diversity requirement is satisfied because at least one of the Plaintiffs and UGE are citizens of different states.  *See* 28 U.S.C. § 1332(d)(2).

**The Putative Class Exceeds 100 Individuals**

6.     Under CAFA, the number of putative class members in the aggregate must not be less than 100.  28 U.S.C. § 1332(d)(5)(B).

7.     As stated in the Complaint, the number of putative class members Plaintiffs seek to represent is "over 100 individuals in each alleged Class."  Compl. ¶ 43.

8.     Based on UGE's review and analysis of its timekeeping and payroll records, UGE has confirmed that there are more than 100 individuals in aggregate in Plaintiffs' proposed classes.

9.     Based on the above, there are more than 100 class members in Plaintiffs' proposed classes.  *See, e.g.*, *New Mexico Top Organics-Ultra Health, Inc. v. Blue Cross & Blue Shield of New Mexico*, No. 1:22-CV-00546-MV-LF, 2024 WL 260935, at *6 (D.N.M. Jan. 24, 2024) (finding numerosity requirement met where complaint alleged that class "will consist of at least" 100 individuals); *Pontrelli v. MonaVie, Inc.*, No. 2:17-CV-01215-DN-DBP, 2019 WL 2436437, at *4 (D. Utah June 11, 2019) (same).

**The Amount-in-Controversy Exceeds $5,000,000**

10.    To remove a case under CAFA, the total amount-in-controversy must exceed $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).  "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see also Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1245 (10th Cir. 2012) ("The amount in controversy, in turn, is not the amount the plaintiff will recover, but rather an estimate of the amount that will be put at issue in the course of the litigation.") (citation and quotation marks omitted); *Hammond v. Stamps.com, Inc.*, 844 F.3d 909, 912 (10th Cir. 2016) ("For the question at this stage in the proceedings isn't what damages the plaintiff will *likely* prove but

6

what a factfinder *might* conceivably lawfully award.") (emphasis in original); *McPhail v. Deere & Co.*, 529 F.3d 947, 956–57 (10th Cir. 2008) (holding that a defendant can rely on an "estimate of the potential damages from the allegations in the complaint" as well as "affidavits or other evidence submitted in federal court afterward," including "summary-judgment type evidence," to establish the amount-in-controversy) (citations and quotation marks omitted).

11. When calculating the amount-in-controversy, a removing defendant may include all compensatory, statutory, and punitive damages, *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1217–18 (10th Cir. 2003), as well as attorneys' fees when such fees are recoverable under the applicable statute, *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998) ("[W]hen a statute permits recovery of attorney's fees a reasonable estimate may be used in calculating the necessary jurisdictional amount . . . ."). In calculating reasonable attorneys' fees, courts in this Circuit have held that it is appropriate to increase the amount-in-controversy by 30% (or more) to account for those recoverable fees. *E.g.*, *Diaz v. Lost Dog Pizza, LLC*, No. 17-CV-2228-WJM-NYW, 2019 WL 2189485, at *5 (D. Colo. May 21, 2019) ("A 33% fee award falls within the norm for these types of cases," *i.e.*, a class action for unpaid wages under the FLSA and Colorado law); *Safier v. State Farm Fire & Cas. Co.*, No. CV 09-801 JCH/ACT, 2010 WL 11493790, at *7 (D.N.M. Jan. 15, 2010) (approving 30% increase to amount-in-controversy to account for attorneys' fees); *Dandy v. Wilmington Fin., Inc.*, No. CV 08-1027 JCH/GBW, 2010 WL 11493721, at *4 (D.N.M. May 3, 2010) (same); *see also Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007) (noting that pursuant to a study conducted by the Federal Judicial Center, plaintiffs recovered a median percentage of 27–30% of the total recovery in attorneys' fees for all class actions resolved or settled over a four-year period) (citation omitted).

12. As noted above, UGE has reviewed and analyzed its business records to determine the amount-in-controversy in this case. To perform that investigation, UGE had to locate, review, and analyze several different types of payroll records and reports. Those included records showing

7

which employees worked exclusively at Denver International Airport during the proposed class periods for each claim in Plaintiffs' Complaint, records reflecting the hours worked by each employee to determine how many overtime-eligible hours each employee worked, and pay data to calculate average hourly and overtime rates for each employee during the relevant periods. In addition, because Plaintiffs' claims are limited to overtime-eligible hours that were allegedly not paid at each employee's overtime rate as a result of a shift trade, Compl. ¶¶ 2–4, 37, UGE also had to determine what hours each employee worked as a result of a shift trade.

13. Through that investigation, UGE determined that Plaintiffs' claims place **at least $7,520,291.60** in controversy.[5] Accordingly, while UGE concedes neither liability on Plaintiffs' claims nor the propriety or breadth of the purported classes as alleged by Plaintiffs, the Complaint places in controversy a sum greater than $5,000,000. For the purposes of drawing a very conservative calculation of this amount-in-controversy, UGE has relied on:

(1) Only a subset of Plaintiffs' claims (Counts I and III);[6]

(2) Only hours worked in excess of 40 hours per week to determine the number of overtime-eligible hours (and has thus not counted any hours worked in excess of 12 hours per day, which would potentially be subject to overtime pay under the laws that Plaintiffs rely on);

---

[5] In alleging the amount-in-controversy for purposes of removal, UGE does not concede nor acknowledge in any way that the allegations in Plaintiffs' Complaint are accurate or that Plaintiffs or any proposed class member(s) are entitled to any amount under any claim or cause of action. Nor does UGE concede or acknowledge that any class may be certified, whether as alleged or otherwise, or that any or all of its current or former employees are entitled to any recovery in this case or are appropriately included in the putative classes.

[6] In the event Plaintiffs challenge removal of this action, UGE reserves the right to include potential liability attributable to Plaintiffs' second and fourth causes of action in calculating the amount-in-controversy.

(3) Only a subset of the potential penalties that Plaintiffs have sought in this case (UGE has not included statutory penalties sought by Plaintiffs under their first cause of action); and

(4) Attorneys' fees of just 20% (which is less than the 30% figure that has been endorsed by courts in this Circuit). *Diaz*, 2019 WL 2189485, at *5.

14. Even when using this very conservative calculation for the total amount-in-controversy, the threshold of $5,000,000 necessary to establish CAFA jurisdiction is satisfied as follows:

15. <u>First Claim for Relief: Denver Minimum Wage Ordinance</u>: Plaintiffs bring their first claim under Denver's Minimum Wage Ordinance (D.R.M.C., Ch. 58), on behalf of a proposed class of employees that includes "[a]ll hourly workers . . . . employed exclusively at Denver International Airport at any time between February 23, 2021 and December 31, 2023." Compl. ¶¶ 46–56. The rules adopted pursuant to that ordinance provide in relevant part that:

> Employers are required to pay workers a premium rate for all time worked greater than 40 hours during a seven-day period ("overtime") and/or 12 hours during a work shift/day, excluding duty-free meal periods. This premium rate shall be not less than 1.5x the applicable regular rate.

Denver Labor, *Civil Wage Theft Rules 2024* § 5.6 (last visited April 17, 2024), *available at* https://denvergov.org/files/assets/public/v3/auditor/documents/denver-labor/2024/civil-wage-theft-rules-2024.pdf.[7] Plaintiffs allege that "[w]hen Defendant paid the Plaintiffs and others for hours worked in excess of 40 in a given workweek at their regular, straight time wage rates, it violated the Denver Minimum Wage Ordinance." Compl. ¶ 54.[8] Based on this ordinance,

---

[7] UGE's reference to this rule is exclusively for establishing the amount-in-controversy in this case. UGE does not concede that this rule, or any other rule promulgated by the City and County of Denver, were lawfully adopted.

[8] Because Plaintiffs' Complaint references only wages for hours worked in excess of 40 hours per week in relation to this claim, to ensure that it has used only conservative calculations to determine the amount-in-controversy for purposes of this Notice of Removal, UGE has not

Plaintiffs seek the "recovery of unpaid overtime wages, penalties "in the amount of $100 for each day that a violation occurred or continued,"[9] "liquidated damages in an amount equal to three times the amount of unpaid overtime compensation," and attorneys' fees. Compl. ¶¶ 48, 55–56.[10]

16.   Based on UGE's review and analysis of its records, this claim places **at least $7,471,728** in controversy. UGE has based this calculation on the following: from February 23, 2021 to December 31, 2023, (1) employees who worked exclusively at Denver International Airport worked 430,300 allegedly overtime-eligible hours based only on weekly (and not daily) overtime; (2) 174,900 of those hours were the result of a shift trade and as a result, were (based on Plaintiffs' allegations), paid at the employee's regular straight-time rate rather than their higher overtime rate; and (3) the average overtime rate for those employees during that period was $26.71 per hour.[11]

17.   <u>Third Claim for Relief: COMPS/Minimum Wage Orders</u>:   Plaintiffs bring their third claim under Colorado's COMPS/Minimum Wage Orders ("Orders"), on behalf of a proposed class of employees that includes "[a]ll hourly workers . . . . employed exclusively at Denver

---

included amounts associated with daily overtime for hours worked in excess of 12 hours in a day/shift. In the event that Plaintiffs contest removal of this case, UGE reserves the right to include those amounts. *See, e.g.*, *Frederick*, 638 F.3d at 1248 (amount-in-controversy is based on amount permitted by statute); *Back Drs. Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830–31 (7th Cir. 2011) (courts may consider all potential damages permitted by statute in calculating amount-in-controversy unless expressly disavowed in the operative complaint at time of removal).

[9] For the purpose of this Notice of Removal, UGE has not included potential statutory penalties. In the event Plaintiffs' challenge removal of this action, UGE reserves the right to include those penalties in calculating the amount-in-controversy.

[10] Plaintiffs also seek "interest at a rate of twelve (12) percent per annum from the date such wages were first due." Compl. ¶ 55. Because interest may not be included in calculating the amount-in-controversy, UGE has not included interest as part of these calculations. *See State Farm Mut. Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269, 1271 (10th Cir. 1998).

[11] $1,557,610 alleged unpaid overtime pay (174,900 weekly overtime-eligible hours allegedly paid at straight time rate due to shift trade x $8.90 average unpaid overtime premium ($26.71 average overtime rate - $17.81 average straight time rate)); $4,669,830 treble damages ($1,557,610 alleged unpaid overtime x 3); $1,245,288 attorneys' fees ($6,226,440 x 20%).

10

International Airport at any time between February 23, 2018 and December 31, 2023." Compl. ¶¶ 66–75.  Relevant to Plaintiffs' claim, the Orders provide that:

> Employees shall be paid time and one-half of the regular rate of pay for any work in excess of any of the following, except as provided in exemptions or variances in Rule 2:
>
> (A) 40 hours per workweek;
>
> (B) 12 hours per workday; or
>
> (C) 12 consecutive hours without regard to the start and end time of the workday.

7 CCR 1103-1, Rule 4.1.1.  The Orders further provide that employees may receive "reasonable attorney fees" in the event they recover unpaid wages.  *Id.* at Rule 8.1(A).  Under the Orders, Plaintiffs allege that UGE "failed to pay the Plaintiffs and others overtime premiums for hours worked over forty in each given workweek."  Compl. ¶ 73.[12]  Plaintiffs allege entitlement to "the unpaid balance of the full amount of wages owed, together with reasonable attorney fees and costs."  *Id.* at ¶ 75.

18.     Based on UGE's review and analysis of its records, this claim places **at least $291,381.60** in controversy.  UGE has based this calculation on the following: from February 23, 2018 to February 22, 2021,[13] (1) employees who worked exclusively at Denver International Airport worked 119,500 allegedly overtime-eligible hours based only on weekly (and not daily) overtime; (2) 33,400 of those hours were the result of a shift trade, and as a result, were (based on

---

[12] Because Plaintiffs' Complaint references only wages for hours worked in excess of 40 hours per week in relation to this claim, to ensure that it has used only conservative calculations to determine the amount-in-controversy, UGE has not included amounts associated with daily overtime for hours worked in excess of 12 hours in a day or 12 consecutive hours regardless of the start and end time of the workday.  In the event that Plaintiffs contest removal of this case, UGE reserves the right to include those amounts.

[13] To ensure that its calculations are conservative, UGE has included potential damages for this claim only for the period that is outside of the proposed class periods covered by Plaintiffs' first and second causes of action, which begin on February 23, 2021.  *See, e.g.*, Compl. ¶ 39.

11

Plaintiffs' allegations), paid at the employee's regular straight-time rate rather than their higher overtime rate; and (3) the average overtime rate for those employees during that period was $21.82 per hour.[14]

19.     After totaling the amounts put in controversy by Plaintiffs' first and third claims, and accepting all allegations in Plaintiffs' Complaint as true for the purposes of this removal petition, there is **at least $7,520,291.60** at stake.  As summarized in the chart below, this dispute exceeds the minimum amount-in-controversy requirement under CAFA.

| CLAIM | AMOUNT-IN-CONTROVERSY |
| --- | --- |
| Count I | $7,476,480 |
| Count III | $291,381.60 |
| **TOTAL** | **$7,520,291.60** |

## CONCLUSION

WHEREFORE, the above-titled Action is hereby removed to this Court from the District Court of the State of Colorado, Denver County.

---

[14] $242,818 alleged unpaid overtime pay (33,400 weekly overtime-eligible hours allegedly paid at straight time rate due to shift trade x $7.27 average alleged unpaid overtime premium ($21.82 average overtime rate - $14.55 average straight time rate); $48,563.60 attorneys' fees ($242,818 x 20%).

Dated: April 19, 2024                          Respectfully submitted,

/s/ *David C. Gartenberg*
David C. Gartenberg
Luke Gilewski
Littler Mendelson, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
Telephone: 303.629.6200
Facsimile: 303.629.0200
Email: dgartenberg@littler.com
           lgilewski@littler.com

Donald J. Munro
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113
Telephone: +1.202.879.3922
Facsimile:  +1.202.626.1700
Email: dmunro@jonesday.com

Aaron S. Markel
JONES DAY
150 West Jefferson Avenue, Suite 2100
Detroit, Michigan 48226
Telephone: +1.313.230.7929
Facsimile:  +1.313.230.7997
Email: amarkel@jonesday.com

*Attorneys for United Airlines, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the date below written, I electronically filed the foregoing with the Clerk of the Court via CM/ECF and caused to be served a true and correct copy of same via United States Mail, addressed as follows:

Andrew H. Turner  
Atty. Reg. #43869  
MILSTEIN TURNER, PLLC  
1490 Lafayette St. #304  
Denver, CO 80218  
Phone: (303) 305-8230  
Email: andrew@milsteinturner.com

Via United States Mail with a courtesy copy via email.

*Attorney for Plaintiff*

DATED: April 19, 2024

By: *s/Elisabeth L. Egan*

14